IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ELIZABETH SAMFORD,

       Plaintiff,

v.                                            CV 18-0176 JHR

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Plaintiff Elizabeth Samford's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum, [Doc. 19], filed August 3, 2018. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge to conduct dispositive proceedings in this matter, including the entry of final judgment. [Docs. 4, 7, 8]. Having studied the parties' positions, the relevant law, and the relevant portions of the Administrative Record ("*AR*"),[1] the Court denies Ms. Samford's Motion for the reasons set forth below.

### I)      INTRODUCTION

This Court's institutional role is specific and narrow. The Commissioner's decision to deny benefits must be upheld where it is supported by substantial evidence and free from harmful legal error. In this case, Ms. Samford argues that the Commissioner's decision to deny her claim at Step Two of the sequential evaluation process was unsupported by substantial evidence because the Administrative Law Judge ("ALJ") who decided her claim rejected the opinion of her treating

---

[1] Documents 12 and 12-1 comprise the sealed Administrative Record. The Court cites to the Record's internal pagination, rather than CM/ECF document and page number.

1

psychologist, failed to accord proper weight to the opinion of a consultative examiner, and failed to ensure the record was complete. However, the Court finds that substantial evidence, defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003), supports the ALJ's treatment of the medical opinions and denial of Ms. Samford's claim without further development of the record. As such, the Commissioner's decision must be affirmed.

## II)     BACKGROUND

Ms. Samford filed an application with the Social Security Administration for supplemental security income benefits under Title XVI of the Social Security Act on March 20, 2014. *AR* at 117-120. She alleged a disability onset date of June 1, 2003. *AR* at 117. However, Ms. Samford did not stop working until November 21, 2013. *AR* at 147. As grounds for disability, Ms. Samford alleged depressive disorder. *AR* at 147. The Administration denied Ms. Samford's claim initially and upon reconsideration, and she requested a *de novo* hearing before an ALJ. *AR* at 49-87.

ALJ T. Patrick Hannon held an evidentiary hearing on October 18, 2016. *AR* at 33-48. Ms. Samford appeared at the hearing *pro se*, and declined additional time to obtain an attorney or representative. *AR* at 36. She also offered no objection to the admission of the evidence that makes up the administrative record in her case. *AR* at 36. On November 9, 2016, the ALJ issued an unfavorable decision, finding that Ms. Samford has not been under a disability from the date her application was filed through the date of his decision. *AR* at 19-29. In response, Ms. Samford filed a "Request for Review of Hearing Decision/Order" on December 5, 2016. *AR* at 115-116. After reviewing her case, the Appeals Council denied Ms. Samford's request for review on December 27, 2017. *AR* at 1-5. As such, the ALJ's decision became the final decision of the Commissioner.

*Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4).[2]

At Step One of the sequential evaluation process, the ALJ found that Ms. Samford has not engaged in substantial gainful activity since her application date. *AR* at 21. At Step Two, he determined that Ms. Samford has the medically determinable impairments of "hypertension, uterine fibroid, osteoarthritis, affective disorder, [and] substance addiction disorder." *AR* at 21. However, the ALJ determined that none of Ms. Samford's impairments, either singularly or in combination, were "severe" under the regulations. *AR* at 22. In other words, the ALJ found that Ms. Samford does not have any impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). As such, the ALJ ended his analysis and denied benefits, *see* 20 C.F.R. § 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not

---

[2] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):
> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

go on to the next step."), finding that Ms. Samford was not under a disability as defined in the Social Security Act from her alleged onset date through the date of his decision. *AR* at 28.

### III)     LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Racette v. Berryhill*, 734 F. App'x 592, 595 (10th Cir. 2018) (quoting *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court reviews the record as a whole, does not reweigh the evidence, and cannot substitute its judgment for that of the agency. *White v. Berryhill*, 704 F. App'x 774, 776 (10th Cir. 2017) (citing *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008)).

### IV)     ANALYSIS

Ms. Samford argues that the ALJ erred in concluding that her mental and physical impairments were not severe and concluding the Sequential Evaluation Process at Step Two. [Doc. 19, p. 2]. In support, she argues that the ALJ failed to properly weigh the opinions of her treating psychologist and an examining physician. [*Id.*]. She also argues that the ALJ breached his duty to develop the record. [*Id.*]. For the reasons that follow, the Court disagrees.

**A) The ALJ reasonably concluded that Ms. Samford's medically determinable impairments are not severe under the regulations.**

At Step Two, Ms. Samford "bore the burden" to demonstrate "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." *See Williamson v. Barnhart*, 350 F.3d 1097, 1099 (10th Cir. 2003); 20 C.F.R. § 416.920(c). While the Tenth Circuit has characterized this showing as "de minimis," "the mere presence of a condition is not sufficient to make a step-two showing." *Williamson*, 350 F.3d at 1100 (citing *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997)). "In determining whether a severe impairment exists, the Commissioner considers the 'effect' of the impairment." *Id.* Thus, the claimant's impairment must be the *cause* of the claimant's failure to obtain substantial gainful work. *Id.* "If the impairments are not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not present the claimant from engaging in any substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). Thus, "[t]he impairment severity requirement cannot be satisfied when medical evidence shows that the impairment(s) has a minimal effect on a person's ability(ies) to perform basic work activities, that is, when he or she has the abilities and aptitudes necessary to do most jobs." SSR 86-8, 1986 WL 68636.

> Examples of these are walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handing; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting.

SSR 85-28, 1985 WL 56856, at *3.

Ultimately, the Commissioner, as opposed to a doctor, is responsible for determining whether a claimant has a severe impairment. *See* 20 C.F.R. § 416.927(d). However, a claim may be denied at Step Two "only if the evidence shows that the individual's impairments, when

considered in combination are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence… adjudication must continue through the sequential evaluation process." SSR 85-28, 1985 WL 56856, at *3. For this reason, "[g]reat care should be exercised in applying the not severe impairment concept." *Id.* at *4.

The ALJ in this case determined that Ms. Samford has no severe impairments. In so concluding, the ALJ rejected the opinion of Ms. Samford's treating psychologist and discounted the weight accorded to the opinions of a consultative examiner. Ms. Samford argues both decisions were contrary to substantial evidence; however, the Court disagrees.

### 1) The ALJ adequately weighed and rejected the opinion of treating psychologist John Davis, Psy. D.

There is a special technique the Commissioner employs to examine mental impairments. *See* 20 C.F.R. § 416.920a. Generally speaking, the technique requires the Commissioner to rate a claimant's degree of functional limitation by reference to four broad functional areas. *See* 20 C.F.R. § 416.920a(c)(3). Those functional areas are: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* The Commissioner uses a five-point scale to rate a claimant's degree of limitation in these four categories: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). If [the Commissioner] rate[s] the degrees of [a claimant's] limitation as "none" or "mild," [she] will generally conclude that [the claimant's mental] impairment(s) is not severe[.]" 20 C.F.R. § 416.920a(d)(1).

The ALJ applied this technique in Ms. Samford's case, ultimately concluding that she has no limitations her activities of daily living, mild limitations in social functioning, and mild limitations in concentration, persistence, and pace. *See AR* at 26. As such, the ALJ concluded that

Ms. Samford's mental impairments are not severe under the regulations. *Id.* Is so finding, the ALJ relied heavily on Ms. Samford's function reports and the psychological consultative examination performed by Reynaldo Abejuela, M.D., while effectively rejecting[3] the opinion of Ms. Samford's treating psychologist, John Davis, Psy.D. *See AR* at 27-28. It was certainly the ALJ's prerogative to do so, if warranted. However, the Tenth Circuit has cautioned that "[i]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)).

Thus, in order to ensure that an ALJ properly evaluates a treating physician's opinions "case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ should determine whether the opinion is entitled to "controlling weight." *Watkins*, 350 F.3d at 1300. An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." *Id.* (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

Because the ALJ does not affirmatively state whether Dr. Davis' opinions are entitled to controlling weight, it appears that he may have skipped the first step under the treating physician analysis and leapt directly to the second. In the past, other judges in this district have held skipping

---

[3] The ALJ gave "little weight" to Dr. Davis' opinions, which the Tenth Circuit has held is equivalent to "effectively rejecting" them. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (equating "according little weight to" an opinion with "effectively rejecting" it); *Crowder v. Colvin*, 561 F. App'x 740, 742 (10th Cir. 2014) (unpublished) (citing *Chapo* for this proposition); *Ringgold v. Colvin*, 644 F. App'x 841, 844 (10th Cir. 2016) (unpublished) (same).

the first step in the analysis to be reversible error. *See Wellman v. Colvin*, CIV 13-1122 KBM, Doc. 19 (D.N.M. Dec. 3, 2014). The Court can see why, as this result appeared mandatory under Tenth Circuit law. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) ("A finding at this stage (as to whether the opinion is either unsupported or inconsistent with other substantial evidence) is *necessary* so that we can properly review the ALJ's determination on appeal.") (emphasis added); *see also Robinson*, 366 F.3d at 1083 (noting that the ALJ failed to expressly state whether an opinion would be afforded controlling weight); *Daniell v. Astrue*, 384 F. App'x 798, 801 (10th Cir. 2010) (unpublished) (quoting *Watkins*, 350 F.3d at 1300).

However, the Tenth Circuit has also indicated that where a reviewing court can determine that an ALJ "implicitly declined to give the opinion controlling weight" there is no ground for remand. *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) ("Ms. Mays argues that the ALJ did not expressly state whether he had given Dr. Chorley's opinion 'controlling weight.' But the ALJ implicitly declined to give the opinion controlling weight. Because we can tell from the decision that the ALJ declined to give controlling weight to Dr. Chorley's opinion, we will not reverse on this ground."); *see also Causey v. Barnhart*, 109 F. App'x 375, 378 (10th Cir. 2004) (unpublished) ("Implicit in the ALJ's decision is a finding that Dr. Waldrop's opinion . . . is not entitled to controlling weight."); *see also Andersen v. Astrue*, 319 F. App'x 712, 721 (10th Cir. 2009) (unpublished) ("It is apparent that the ALJ concluded that these opinions were not entitled to controlling weight. Although ordinarily the ALJ should have made explicit findings to this effect . . . we are not troubled by the substance of the ALJ's determination."). Here, the ALJ's decision to ascribe Dr. Davis' opinion "little weight" shows that he implicitly declined to give it controlling weight. Therefore, the Court hesitates to reverse the ALJ solely for failing to explicitly discuss whether Dr. Davis' opinion was entitled to controlling weight. *See Perez v. Colvin*, CIV 15-0429

MCA-KBM, 2016 WL 8229939, at *6 (D.N.M. Oct. 12, 2016), *report and recommendation adopted*, 2016 WL 8229937 (D.N.M. Nov. 7, 2016).

However, even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § [416.927]" at the second step of the ALJ's analysis. *Watkins*, 350 F.3d at 1300 (quoting SSR 96–2p, 1996 WL 374188, at *4). The Tenth Circuit has summarized these factors as:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser*, 638 F.3d at 1331 (quoted authority omitted); *see* 20 C.F.R. § 416.927(c)(1)-(6). An ALJ is "not required 'to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion.'" *Razo v. Colvin*, 663 F. App'x 710, 715 (10th Cir. 2016) (unpublished) (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)). Rather, an ALJ must simply provide "good reasons" for the weight assigned to the treating physician's opinion. *Id.*

The Court finds that these standards were met as to Dr. Davis. The ALJ's reasons for giving Dr. Davis' opinions little weight are set forth in detail in his opinion:

> The undersigned gives little weight to the opinion of the claimant's treating psychologist John Davis, Psy.D. (5F). In November 2014, Dr. Davis opined that despite the claimant's self-reports to the contrary, she was generally capable of attending to her basic needs. However, Dr. Davis accepted the claimant's self-reports to conclude that she was unable to adapt to a typical work environment. He considered her unable to manage interpersonal relationships in a work setting, and that she would act out on impulses of conflict and violence. Dr. Davis opined that her depressive features would have a negative effect on work attendance. Finally, he opined that the claimant was competent to manage funds.

Dr. Davis stated that his diagnoses of recurrent severe major depressive disorder with psychotic features, and dissociative identity disorder were based on findings including: extended periods of isolation, avoidance, and intolerance of social contact, magical thinking, paranoid and bizarre thought process, aggression and violence, and lapses in awareness. These reported findings are unaccompanied by session or group progress notes and are in stark contrast to the findings detailed by the consultative psychiatric examiner (4F). They are also inconsistent with the claimant's own function report (6E) in which she acknowledges no problems getting along with others and details in (sic) active social life. That self-report is confirmed by the statement of the claimant's mother (7E). Although Dr. Davis speaks of verbal conflicts with family, the claimant's own family considered such "conflicts" to be normal expression of differences of opinion.

*AR* at 28. In sum, after carefully considering Dr. Davis' opinions, the ALJ rejected them for three reasons: (1) they were unsupported by session progress notes; (2) they were in "stark contrast" to the opinions of consultative examiner Dr. Abejuela; and, (3) they were inconsistent with the function reports Ms. Samford and her mother submitted to the Agency. The question is whether these reasons are supported by substantial evidence.

As Ms. Samford argues, and the Commissioner concedes, the ALJ's first reason is "'technically' incorrect." [Doc. 19, p. 14; Doc. 22, p. 11]. In fact, contrary to the ALJ's finding, there *were* session notes that supported Dr. Davis' diagnoses. *See AR* at 234-242. The ALJ, however, appears to have overlooked these records, as they are not mentioned in the body of his decision. *See AR* at 26-28. As such, the Court agrees that the ALJ's first reason for rejecting Dr. Davis' opinion is unsupported by substantial evidence.

However, as noted, this was not the ALJ's only reason for rejecting Dr. Davis' opinion. Thus, if the ALJ's other reasons are supported by substantial evidence, the decision must stand. *See, e.g.*, *Lax v. Astrue*, 489 F.3d 1080, 1088 (10th Cir. 2007); *Bainbridge v. Colvin*, 618 F. App'x 384, 390 (10th Cir. 2015) (unpublished) ("[E]ven if this reason was improper, the other reasons the ALJ gave were more than sufficient for rejecting Dr. Bates's opinion."); *Bills v. Comm'r, SSA*, 748 F. App'x 835, 840 (10th Cir. 2018) (unpublished) ("We agree that this was not a good reason

for discounting Dr. Mitchell's opinion regarding Ms. Bills's ability to stand and walk. This misstep, however, is not dispositive because substantial evidence still supports the ALJ's rejection of Dr. Mitchell's opinion of Ms. Bills's standing and walking abilities."). That is the case here. Ms. Samford cannot (and does not) argue that Dr. Davis' opinion is consistent with consultative examiner Dr. Abejuela's.[*See* Doc. 19, pp. 14-15]. Rather, she argues that Dr. Abejuela's opinion was completed prior to Dr. Davis', and so "he did not have the benefit of reviewing Dr. Davis' opinion." [Doc. 25, p.3]. This may be true, but Dr. Abejuela *did* have the benefit of interviewing and examining Ms. Samford personally, *AR* at 251-258, and she has failed to demonstrate why or how the ALJ erred in relying on his opinion. *See, e.g.*, *Scott v. Berryhill*, 695 F. App'x 399, 404 (10th Cir. 2017) (unpublished).

Finally, Ms. Samford argues that the ALJ's reliance on her function reports was misplaced. [*See* Doc. 19, pp.14-15]. However, having reviewed these reports in the first instance, the Court cannot fault the ALJ for relying on them to discount Dr. Davis' severe social limitations. *See AR* at 164-183. While it is true that Ms. Samford stated that her anxiety and depression would make it hard for her to function normally in public, she admits, as she must, that she noted she had no problems getting along with others in the social activities section of the form. [Doc. 19, p.14]; *See AR* at 164, 170. Ms. Samford also admitted on the form that she is unafraid to go out in public alone, that she is able to shop in stores, that she can interact with less than 5-6 people at one time, that she attends church on Sundays and church functions once a month, and that she gets "along well and often befriend[s] authority figures." *See AR* at 164-172. Ms. Samford's mother's function report similarly indicates that she emails and socializes on Facebook daily and "visits with church friends - goes to have smoothies or coffee or lunches" once a month or so, has no problems with authority figures, and has never been fired from a job because of problems getting along with

others. *AR* at 180-181. In sum, having reviewed both Ms. Samford and her mother's forms, the Court agrees that there is some support for the notion that Ms. Samford suffers from social anxiety. *See AR* at 164-183. However, taking the reports as a whole, the ALJ permissibly concluded they were inconsistent with Dr. Davis' extreme limitations. *See Scott*, 695 F. App'x at 404.

Thus, the ALJ proffered two specific and legitimate reasons for rejecting Dr. Davis' severe restrictions, both which were supported by substantial evidence (to wit, they were supported by Ms. Samford's own self-reporting). These reasons touch upon the consistency of Dr. Davis' opinions with the record as a whole, which was a valid reason to reject Dr. Davis' opinion under the regulations. *See* 20 C.F.R. § 416.927(c)(4). Therefore, the Court finds that the ALJ did not err in concluding that Ms. Samford's mental impairments, while medically determinable, do not cause more than mild limitations in her functioning, and are thereby not severe under the regulations. *See* 20 C.F.R. § 416.920a(d)(1).

> ### 2) The ALJ's reasons for discounting the opinions of examining physician Bryan To, M.D., and non-examining physician David Hicks, M.D., are supported by substantial evidence.

The Administration referred Ms. Samford to Bryan To, M.D., for a consultative physical examination, which occurred on June 6, 2014. *AR* at 244. Dr. To thoroughly examined Ms. Samford, noting essentially normal findings. *See AR* at 244-247. Nonetheless, based on her history, Dr. To diagnosed hypertension and uterine fibroid, and limited Ms. Samford to: pushing, pulling, lifting and carrying 50 pounds occasionally and 25 pounds frequently; sitting, standing and walking six hours in an eight-hour workday; frequent bending, kneeling, stooping, crawling and crouching; frequently walking on uneven terrain, climbing ladders or working with heights; and from working with heavy machinery. *AR* at 248.

The ALJ gave "partial weight" to Dr. To's opinions as to Ms. Samford's functional limitations because:

> Dr. To based these limitations on diagnose sees (sic) of hypertension and uterine fibroid (3F/4), but these are based on medical history presented by the claimant and not by the findings of Dr. To (3F/1). To the contrary, Dr. To's examination yielded benign results, including his examination of the claimant's abdomen and blood pressure slightly below the "high" range of 140 mm Hg systolic and slightly into the "high" range beginning at 90 mm Hg diastolic.

*AR* at 25-26. The ALJ also gave "partial weight" to the opinion of a non-examining physician, David Hicks, M.D., who reviewed the record at the initial level and "largely adopted" Dr. To's lifting restrictions (giving his findings "great weight") but eliminated his postural and environmental limitations "-noting that the medical evidence of record did not reasonably substantiate the claimant's allegations about the functionally limiting effects of her symptoms." *See AR* at 26, 57-58.

As with treating physicians' opinions, "[i]t is the ALJ's duty to give consideration to all the medical opinions in the record. . . . he must also discuss the weight he assigns to such opinions." *Keyes-Zachary*, 695 F.3d at 1161 (citations omitted). The same is true of "examining medical source opinions." *See Ringgold*, 644 F. App'x at 843 (citing *Chapo*, 682 F.3d at 1291; 20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1)). Such an opinion "may be dismissed or discounted, of course, but that must be based on an evaluation of all of the factors set out in the regulations and the ALJ must provide specific, legitimate reasons for rejecting it." *Id.*

> When evaluating the opinion of any medical source, an ALJ must consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) (citing *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995); 20 C.F.R. §§ 404.1527(c), 416.927(c)).

The ALJ's primary reason for discounting Drs. To and Hicks' respective opinions was because Dr. To's examination results did not support his opined limitations. *See AR* at 26. Ms. Samford reframes the issue, arguing that, while Dr. To did rely on her subjective statements regarding her history, "these statements were supported by the objective medical evidence." [Doc. 19, p. 17]. Ms. Samford's argument misses the mark. The ALJ did not discount the weight assigned to Dr. To's opinion because he relied on Ms. Samford's subjective statements, but because "Dr. To's examination yielded benign results." *AR* at 25. This reason was consistent with the regulatory factor requiring the ALJ to consider the supportability of the opinion. *See* 20 C.F.R. § 416.927(c)(3).

However, even putting aside this reason, the ALJ gave two other valid reasons for concluding that Ms. Samford has no severe physical impairments. *See AR* at 26. Immediately following the paragraphs where he weighed the medical opinions the ALJ stated:

> The conclusion that the claimant does not have a physical impairment or combination of physical impairments that significantly limits her ability to perform basic work activities is supported by her self-report, substantiated by her mother's report, that she is no more than mildly limited in her activities of daily living, and by the mild objective findings in the medical record.

*AR* at 26. These findings are preceded by roughly three single-space pages discussing Ms. Samford's function report, hearing testimony, her mother's function report, and the medical evidence of record. *See AR* at 23-25. As with Dr. Davis' opinions, it was permissible for the ALJ to conclude that Drs. To and Hicks' opinions were entitled to less weight on the basis that they ascribed limitations that were inconsistent with the rest of the record, including Ms. Samford's own self-reporting. *See* 20 C.F.R. § 416.927(c)(4).

Ultimately, the Court finds that the ALJ correctly applied the regulatory language in discounting Drs. To and Hicks' opinions. Ms. Samford's argument to the contrary is an invitation to reweigh the evidence and ascribe greater weight to Drs. To and Hicks' opinions, which this Court cannot do. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *see, e.g.*, *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005) ("On the record before us, the ALJ was free to reject Dr. Meyers's opinion."); *Groom v. Comm'r, SSA*, 736 Fed. Appx. 766, 767 (10th Cir. 2018) ("[O]ur role is not to reweigh the evidence presented to the ALJ…. The ALJ's interpretation of Dr. Berg's report was reasonable and supported by evidence in the record."); *Johnson v. Comm'r, SSA*, 2019 WL 994516, at *5 (10th Cir. Mar. 1, 2019) ("[W]e agree with the Commissioner that we must reject Johnson's alternative interpretations of the evidence, because this would require us to reweigh the evidence and substitute our judgment for the Commissioner's, which is something we cannot do.").

**B) The ALJ had no duty to further develop the record in this case.**

Ms. Samford's final argument in favor of reversal is that the ALJ failed to adequately develop the record with regards to her mental impairments. [*See* Doc. 19. P. 19]. Ms. Samford's conclusion is supported only by the premise that there were additional records concerning her treatment with Dr. Davis that do not appear in the record. [*Id.*, p. 20]. She posits that these medical records "would have been of assistance in determining the severity of Ms. Samford's mental impairments." [*Id.*]. The Court is not convinced.

While the burden to prove disability is on the claimant, "an ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (quoted authority omitted). However, "the ALJ is not required to act as the claimant's advocate in order to meet his

duty to develop the record." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008). Thus, the regulations only require the Commissioner to further develop the record where it is incomplete or inconsistent. 20 C.F.R. § 416.920b(b). There is little dispute that the record was incomplete in this case, as it appears to be missing the treatment notes Ms. Samford focuses on. The question is what steps the Administration was required to take in the face of an incomplete or inconsistent record.

Most basically, the regulations only require the Commissioner to obtain missing medical records where the evidence does not contain all of the information she needs to make her decision. 20 C.F.R. § 416.920b(b). Moreover, even where there is an insufficiency or inconsistency in the record, the Commissioner *may* recontact the medical source, request additional evidence, ask the claimant to undergo a consultative examination *or* ask the claimant or others for more information. *See* 20 C.F.R. § 416.920b(b)(2). As the Commissioner correctly points out, "the Agency already availed itself of one of those options" by ordering a consultative psychological examination. [Doc. 22, p. 19]; *see AR* at 251-258; *see also* 20 C.F.R. § 416.919a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim."). The presence of Dr. Abejuela's consultative examination report provided the ALJ with substantial evidence by which to determine that Ms. Samford's mental impairments are not severe. *See, e.g.*, *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (Affirming where an ALJ relied on a consultant's determinations that the claimant's mental impairment was not severe, and finding no further duty to develop the record.). As such, the ALJ did not breach his duty to develop the record by failing to request all of Dr. Davis' treatment notes in this case.

## V)      CONCLUSION

The Court is cognizant of the fact that denials at Step Two of the sequential evaluation process are rare. However, that does not alter this Court's institutional role, which is to ensure that the Commissioner's denial of supplemental security income benefits is supported by substantial evidence. The Court finds that this deferential standard, which only requires more than a mere scintilla of evidence, was met in this case.

Wherefore, IT IS THEREFORE ORDERED that Plaintiff Elizabeth Samford's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 19] is DENIED and the decision of the Commissioner is AFFIRMED.

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent